**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2258-24

KATIA ETIENNE, on behalf of
herself and those similarly situated,

    Plaintiff-Appellant,

v.

RESURGENT CAPITAL
SERVICES LP, and CACH, LLC,

    Defendants-Respondents.

_____

> Argued May 5, 2026 – Decided July 23, 2026
>
> Before Judges DeAlmeida and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5557-21.
>
> Yongmoon Kim argued the cause for appellant (Kim Law Firm LLC, attorneys; Mark Jensen and Yongmoon Kim, on the briefs).
>
> Jonathan M. Robbin (J. Robbin Law PLLC) of the New York bar, admitted pro hac vice, argued the cause for respondents (Jonathan M. Robbin and Jacquelyn A. DiCicco (J. Robbin Law PLLC), attorneys; Jacquelyn A. DiCicco, of counsel and on the brief).

PER CURIAM

Plaintiff Katia Etienne, individually and on behalf of all others similarly situated, appeals from two Law Division orders dismissing her complaints against defendants Resurgent Capital Services LP (Resurgent) and CACH, LLC (CACH) for failure to state a claim upon with relief can be granted:  (1) the June 14, 2024 order dismissing her complaint without prejudice; and (2) the February 14, 2025 order dismissing her first amended complaint with prejudice.  We affirm.

I.

Plaintiff incurred a debt which she did not pay.  The lender transmitted that debt to CACH, a debt collector.  The debt was placed with Resurgent, the master servicing agent for CACH.

On or about July 16, 2020, Resurgent, on behalf of CACH, sent a notice in compliance with a New York banking regulation, see 23 N.Y.C.R.R. § 1.4, to plaintiff in response to her inquiry and dispute of the debt.  The notice, which listed the account number associated with the debt, as well as plaintiff's name and address, which plaintiff claims was obsolete, stated, "You are receiving this notice as a result of your recent dispute regarding the above-referenced account. New York state regulations require us to inform you that you have the right to

2

request substantiation of this debt." The notice explained the procedure for requesting substantiation of the debt and provided the address to which the request must be sent. The notice stated, "This communication is from a debt collector. However, this notice is for informational purposes only, and is not an attempt to collect a debt."

On July 15, 2021, plaintiff filed a five-count putative class action complaint in the Law Division alleging violations of the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C.A. §§ 1692 to 1692p, unconscionable practices under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -229, negligence, and invasion of privacy. Plaintiff's claims were based on her allegation the July 16, 2020 notice was generated and mailed by a third-party vendor to whom defendants transmitted her private financial information without her consent. She sought declaratory and injunctive relief, damages, including treble damages under the CFA, attorney's fees, and costs, on behalf of herself and the class.

Plaintiff's FDCPA claims were based on Section 1692c(b) of the statute. That provision states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of

any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

[15 U.S.C.A. § 1692c(b).]

The provisions of Section 1692b of the FDCPA are not applicable here.

On November 11, 2022, defendants moved pursuant to <u>Rule</u> 4:6-2(e) to dismiss the complaint for failure to state a claim upon which relief can be granted.[1]

On June 14, 2024, the court issued a comprehensive written decision granting defendants' motion. The court concluded:

> The conduct at issue – the transmitting of data to a letter vendor for the purpose of preparing a letter to then be directed to the debtor herself – is simply not "communicat[ing]" proscribed by the FDCPA, nor was the communication undertaken "in connection with the collection of any debt" under any sensible interpretation of such terms as used in the statute. The letter vendor engaged by the debt collector here is no different than the telephone/telegram operator engaged as a "medium" for an otherwise permitted communication.
>
> To hold otherwise is to ignore the reality that debt collectors employ letter vendors to prepare correspondence necessary for their lawful operations

---

[1] Shortly after the complaint was served, defendants removed the matter to the United States District Court. On September 14, 2022, the District Court remanded the matter to the Law Division.

and, in effect, to require such debt collectors necessarily to conduct business on a fully integrated basis without need for an outside letter vendor. There is simply no basis in either the letter or the intendment of the FDCPA for any such conclusion.

While acknowledging a literal application of Section 1692c(b) could encompass defendants' transmission of plaintiff's information to a letter vendor, the motion court examined the legislative declaration of purpose set forth in the FDCPA. The court noted when enacting the FDCPA, Congress found: "There is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C.A. § 1692(a). In addition, the motion court observed Congress declared: "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.A. § 1692(e). The court noted the complaint contained no allegations the letter vendor or its employees used the information transmitted by defendants to inflict reputational or other harm on plaintiff or misused the information in any other way.

5

In addition, the motion court found defendants' transmission of information to the letter vendor was not "in connection with the collection of any debt" within the meaning of Section 1692c(b). The court explained:

> The purpose of providing the information to the vendor was not collection. The communication made no demand for payment, nor was it intended to inform the recipient of the debtor's indebtedness for purposes of facilitating a collection. Indeed, the letter vendor had no ability, directly or indirectly, to persuade, coerce or shame the debtor into payment merely by receipt of the data concerning the debt. Instead, the debt collector transmitted the data to enable preparation of a letter to the debtor, which letter, when issued by or for the debt collector, was a communication in connection with collection.
>
> . . . .
>
> What is more, there are no facts alleged establishing that Resurgent intended a communication with a "person" when it transmitted the information via electronic means to the letter vendor. Indeed, as Resurgent points out, it is unlikely that any individual at the letter vendor ever saw, let alone examined, the information concerning the debt.
>
> Those individuals working for the letter vendor(s) in issue in this case are far more akin to clerical employees of the debt collector or personnel with postal/telephone/telegram operators that happen to receive and process information conveyed by a debt collector than to an employer, neighbor, friend or family member of a debtor. In truth, given advances in technology, letter vendors are even less likely than any such functionaries actually to see the debtor's data.

6

> Such personnel are instead more realistically viewed as part and parcel of the "medium" by which a communication is ultimately undertaken, and not the intended recipients of that communication.

Thus, the court concluded plaintiff had not alleged a viable cause of action under the FDCPA.

The court also found plaintiff failed to allege a valid claim under the CFA. The court reasoned: "[E]ven presuming the [CFA] regulates the conduct of debt collectors (a highly dubious proposition), the transmission of information to a letter vendor is simply not an unconscionable commercial practice" under the CFA. The court found "[t]here is nothing deceptive, fraudulent, or unconscionable about either engaging a letter vendor for a legitimate purpose or transmitting to such vendor the information the latter needs to perform its function." The court noted plaintiff had not identified an ascertainable loss causally linked to defendants' transmission of her personal information, a necessary element of a CFA claim.

The motion court found "the theory of recovery sounding in common law negligence to be untenable as well." The court explained, "There is no duty of care owed by a debt collector to a debtor that provides the foundational basis for a claim sounding in negligence." To the extent plaintiff argued the FDCPA established a standard of care for debt collectors, the court concluded she did

7

not allege a valid claim defendants violated the statute for the reasons it previously stated.

Finally, the motion court concluded plaintiff did not plead a viable cause of action for invasion of privacy. The court found plaintiff did not allege defendants published her private information "by communicating it to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge," as required to establish invasion of privacy. See Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 340 (App. Div. 1982). Accepting plaintiffs' allegations as true, the motion court found, at worst, defendants communicated her private information to a small group of employees at the letter vendor. The court noted, however, plaintiff did not allege any employee of the letter vendor read her information during production of the mailing, much less publicized the information to any other person.

The court dismissed the complaint without prejudice to afford plaintiff an opportunity to replead her claims against defendants. The court noted plaintiff could "address the legal deficiencies identified" in the court's decision "by alleging facts concerning some impropriety in the handling of data by the letter vendor that caused her data to be provided to other third parties or even to be

publicly disseminated."  A June 14, 2024 order memorialized the court's decision.

On July 15, 2024, plaintiff filed the first amended complaint.  She reiterated her claims and added allegations that letter vendors in general compile consumer data relating to debt collection practices and payments to model and market consulting services to debt buyers and debt collectors.  Plaintiff alleged letter vendors and related companies, including the parent company of the letter vendor used to generate the notice plaintiff received from defendants, profit from their analysis of the customer data sent to them by debt collectors.  In addition, plaintiff alleged defendants' transmission of her information to the letter vendor increased the risk the information would be improperly released to other parties.

On August 19, 2024, defendants moved pursuant to Rule 4:6-2(e) to dismiss the first amended complaint for failure to state a claim upon which relief can be granted.  Plaintiff opposed the motion and cross-moved for leave to file a second amended complaint.  Defendants opposed the cross-motion.

On February 14, 2025, a different judge issued an oral decision granting defendant's motion to dismiss the first amended complaint.  The second motion judge incorporated the written decision of the first motion judge and found the

additional allegations in the first amended complaint did not cure the deficiencies that led to dismissal of the complaint. The judge found the additional allegations, if true, did not constitute violations of the FDCPA or the CFA, or constitute common law causes of action.

The second motion judge also found dismissal of the first amended complaint with prejudice was warranted and declined to grant plaintiff leave to file a second amended complaint. A February 14, 2025 order memorialized the decision to dismiss the first amended complaint with prejudice. A second February 14, 2025 order denied plaintiff's cross-motion to file a second amended complaint.

This appeal followed. Plaintiff argues the court erred when it dismissed her complaint and first amended complaint because it: (1) failed to apply the unequivocal prohibition in the FDCPA on a debt collector communicating a debtor's protected information to a third party, except in limited circumstances not applicable here; (2) predicated violation of the FDCPA on the third party's use of protected information it received from a debt collector, a condition not included in the plain text of the statute; and (3) did not follow federal precedents

holding a debt collector's transmission of protected information to a third-party letter vendor violates the FDCPA.[2]

## II.

We apply a de novo standard of review to a trial court's order dismissing a complaint under Rule 4:6-2(e).  See Stop & Shop Supermarket Co., LLC v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017) (quoting Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 413 (App. Div. 2014)).  Under the rule, we owe no deference to the motion judge's conclusions.  Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011).  Our "inquiry is limited to examining the legal sufficiency of the facts alleged on the

---

[2]  Plaintiff's March 31, 2025 notice of appeal and case information statement listed only the February 14, 2025 order dismissing her first amended complaint as the subject of her appeal.  On August 22, 2025, plaintiff filed, without leave of court, an amended notice of appeal that added the June 14, 2024 order to the list of appealed orders.  On September 19, 2025, plaintiff moved for leave to file a second amended notice of appeal that added the February 14, 2025 order denying her motion to file a second amended complaint to the list of appealed orders.  Defendants opposed the motion and cross-moved to dismiss the first amended notice of appeal as untimely to the extent it purported to appeal the June 14, 2024 order.  We denied both plaintiff's motion and defendant's cross-motion.  Etienne v. Resurgent Capital Servs., No. A-2258-24 (App. Div. Oct. 27, 2025).  Our decision on the motions left in place plaintiff's amended notice of appeal listing both the February 14, 2025 and June 14, 2024 orders.  Although defendants' merits brief includes a point addressing the timeliness of plaintiff's appeal of the June 14, 2024 order, that issue was resolved by the denial of defendants' cross-motion to dismiss the amended notice of appeal.

face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). "A pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Fam. Assocs., LP, 423 N.J. Super. at 113 (citing Camden Cnty. Energy Recovery Assoc., LP v. N.J. Dep't of Env'l Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd, 170 N.J. 246 (2001)).

To establish an FDCPA claim, a plaintiff must demonstrate: (1) the plaintiff is a consumer; (2) the defendant is a debt collector; (3) the challenged practice involves an attempt to collect a "debt" as defined by the FDCPA; and (4) the defendant violated the FDCPA in attempting to collect the debt. Midland Funding LLC v. Thiel, 446 N.J. Super. 537, 549 (App. Div. 2016) (quoting Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014)).

For purposes of the motion to dismiss, we, like the motion court, accept as true plaintiff's allegations she is a consumer and defendants are debt collectors under the FDCPA. The viability of plaintiffs' claims under the FDCPA is dependent on whether, by transmitting information about plaintiff's debt to a third-party letter vendor, defendants "communicate[d], in connection

with the collection of any debt, with any person other than the consumer" within the meaning of 15 U.S.C.A. § 1692c(b).

"In construing the meaning of a statute . . . our review is de novo." Nicholas v. Mynster, 213 N.J. 463, 478 (2013). To interpret a statute, we "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[W]e begin by looking at the statute's plain language," Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012), and give the language "its ordinary meaning and . . . construe[ it] in a common-sense manner," State in re K.O., 217 N.J. 83, 91 (2014).

"We will 'neither rewrite a plainly[] written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). However, "[a]n enactment that is part of a larger statutory framework should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme." Vitale v. Schering-Plough Corp., 447 N.J. Super. 98, 115 (App. Div.

2016) (quoting Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)).

On de novo review, we discern no error in the motion court's conclusion defendants' transmission of information about plaintiff's debt to a third-party letter vendor was not the type of conduct Congress intended to regulate when it enacted the FDCPA. "In adopting the [FDCPA], . . . Congress left no doubt that its purpose was to protect debtors from abuse and that Congress perceived a need for national uniformity to fulfill that goal." Rutgers-The State Univ. v. Fogel, 403 N.J. Super. 389, 394 (App. Div. 2008). Defendants' transmission of information to the letter vendor was merely to facilitate the regulatory obligation to inform plaintiff of her right to seek substantiation of the debt defendants claimed was outstanding. Plaintiff made no allegation the communication was anything other than a routine business practice.

Plaintiff did not allege defendants caused public release of information about her debt. Indeed, she did not allege any employee of the letter vendor saw the information transmitted by defendants or that generation and mailing of the July 16, 2020 notice by the third-party vendor required human review of her information. Plaintiff also failed to identify any concrete harm she suffered

14

because of defendants' use of a third-party letter vendor, given she does not allege public disclosure of her protected information.

Thus, accepting the allegations in the first amended complaint as true, plaintiff cannot establish defendants' communication with a third-party letter vendor was an abusive practice proscribed by the FDCPA. Plaintiff's wooden interpretation of the statute to apply to what is essentially an internal communication to facilitate defendants' communication with plaintiff about her right to seek substantiation of the underlying debt is inconsistent with congressional intent.

We are not persuaded by the federal and out-of-state decisions on which plaintiff relies to support her interpretation of the FDCPA. We note "decisions of the federal courts of appeals are not binding on this court." Daniels v. Hollister Co., 440 N.J. Super. 359, 367 n.7 (App. Div. 2015). See also Pressler & Verniero, Current N.J. Court Rules, cmt. 3.5 on R. 1:36-3 (2026) ("On questions of federal constitutional law and statutory law, only decisions of the United States Supreme Court are binding on the courts of this state."). We are confident the interpretation of the FDCPA adopted by the motion court comports with congressional intent and the text of the statute.

15

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

---

[3]  Plaintiff's merits brief does not address the dismissal of her claims not based on the FDCPA.  We therefore deem any arguments with respect to those claims waived.  "[A]n issue not briefed is deemed waived."  Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026); Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).